Honorable, the Judges of the United States Court of Appeals for the Eighth Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Please call our one case for argument today. 20-2864 from the Eastern District of Missouri, Brian Baude v. Gerald Leyshock et al. Ms. Duncan. Thank you, Judge. Good morning, and may it please the Court. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Officials are not liable for bad guesses in gray areas, they are liable for transgressing bright lines. In this case, plaintiff brings several 1983 claims against individual police officers after he and dozens of others were arrested at the intersection of Washington and Tucker in downtown St. Louis during a weekend of protests about the Jason Stockley verdict in September 2017. Upon a review of the motion for judgment of defendant's motion for judgment on the pleadings, the District Court denied the defendant officer's qualified immunity on plaintiff's unlawful seizure claims and his claims of excessive force. This appeal follows. The District Court erred in denying defendant's qualified immunity and the order should be cause to arrest plaintiff as the crowd at the intersection was acting as a unit to violate the law. Two, subordinate officers reasonably followed orders from their superior officers to enact the mass arrest that included plaintiff. And three, as to plaintiff's excessive force claims, defendants are entitled to qualified immunity as plaintiff fails to allege that any named officer effectuated force upon him and also fails to allege that any defendant was put on notice that the force against him was excessive. First, officer has had at least arguable probable cause to believe the arrestees at the intersection were acting as a unit to violate the law. Officer... Counselor, let me ask you a question about that. Is the District Court's conclusion that the arrestees were not acting as a unit a finding of fact or conclusion of law? It's a finding... It's a conclusion of law that is informed by the facts. The District Court had before it an extensive record, not typical of a complaint. The second amended complaint... Do you have precedent for the proposition that this is a conclusion of law rather than a finding of fact? I do not off the top of my head, Your Honor. I apologize. But officers are entitled to qualified immunity if they have at least arguable probable cause. I will say as to the... I think what you're getting at is the jurisdictional aspect of this. And whether this court has jurisdiction to review it. If the District Court made a finding of fact that these people were not acting as a unit, we would have to find that that was clearly erroneous. Correct. But that was... I still maintain that that was a conclusion of law. Under Reese v. Gruss, an 8th Circuit 1995 case, it says where the party asserting qualified immunity asked the court to examine the facts as they were known to the government official in order to determine whether clearly established law would be violated by his actions. Anderson requires that appellate courts accept jurisdiction and address their arguments. So again, I maintain that it is a conclusion of law and this court can review it de novo. Well, actually, that's a very good question because once again, you've gone back to jurisdiction and the real question is, what case, law, or authority do you have for the proposition that the finding of acting as a unit is a question of law rather than a mixed question of fact and law or rather than a pure question of fact? Whether there's arguable probable cause is based on whether it's objectively reasonable for an officer to take its actions and there are facts that inform that, but as to whether the ultimate question of whether there is arguable probable cause is a question of law. Counselor, can I have a follow-up question on that? We're not at summary judgment here, right? We're judgment on the pleading. So how does that, it seems to me we're more at just, did he plausibly allege? So how does that play into our analysis here? We are at a motion for judgment on the pleading stage and however, the facts that are included in the exhibits to the complaint inform the plausibility of the allegations that are made in the complaint and this court can take that into consideration under rule 10C, the civil rules provide that an attachment to a complaint generally becomes part of the pleading for all purposes and in this case, the exhibits attached to the complaint make it so that the allegations in the complaint are implausible. Here, the record as incorporated into the complaint via the exhibit show that the officers reasonably believed that the crowd at Washington and Tucker was acting as a unit to violate the law. Sunday's event- And I have a follow-up, another follow-up question, Ms. Duncan, just about as you say that they inform the complaint. I think the parties seem to disagree how these exhibits should be considered and so I want to ask you a little more specifically on how you believe we should be considering those exhibits, how you think the district court considered them as well and whether you think there's a difference between the video and the documents that are attached and I know I've got a couple of questions in there but maybe they're all related and you could sort of address them together. Sure, and I hope I addressed your question thoroughly. The use of exhibits, again, generally becomes part of the pleadings for purposes of the complaint and in this case, we have the AMA transcript as well as a video record that inform and make implausible some allegations within the complaint, one of them being that there were no dispersal orders given. The video clearly shows that 30 minutes prior to the mass arrest that there was a dispersal order given near the intersection of Washington and Tucker. That's just one example of how the video informs the plausibility of the allegations in the complaint. It is not unheard of at this stage for exhibits attached to the complaint to overcome the complaint. This has happened in Kiesling versus Halliday, a 2017 8th Circuit case wherein the court held that the case should have been dismissed because the officer was entitled to qualified immunity where the affidavit attached to the complaint established probable cause for search of the residents at issue. And in that case, whose affidavit was it? It was the police officer's affidavit. And so the plaintiff attached a police officer's affidavit to the complaint and the court accepted that as part of the complaint and part of the allegations? Yes, and ruled therefrom that the affidavit overcame the plausibility of the allegation in the complaint that the police officer did not have probable cause to arrest her or to search the residents rather. Sunday's events mirrored the events of two days prior where the protests were initially peaceful during the day and then disintegrated into violence and vandalism at night. The crowd moved downtown after protests at the police headquarters. The crowd appeared to disperse for some time but then reassembled and then there were allegations or there were reports to police that they were being threatened and that police officers were being assaulted. At that point, at Tucker and Locust, the crowd was ordered to disperse. Counselor, let me ask you about that. You're characterizing the situation and the scene there that evening, but is that based on the face of the complaint or are you characterizing it? Because we have to look at the face of the complaint here. Correct. So some of those facts are included in the face of the complaint, but a lot of it is in the exhibits. The exhibits, again, inform on the plausibility of the complaint and where those conflict. Case law has shown that where an exhibit and the complaint conflict, the exhibit typically controls. That's out of the Seventh Circuit 2007 case, Forest versus Universal Savings Bank. Counselor, I'm not so sure they conflict to that degree. For example, I did see in the video there was an overturned flower pot. I didn't see much else. I did see someone pushing a baby in a stroller. Yes, but there are other circumstances where, for example, they alleged that there weren't any dispersal orders given past the 830 mark. There's clearly a dispersal order given 30 minutes prior to the mass arrest within the video, for example. There's also video evidence that shows- Counsel, when you say that the exhibit sort of takes precedence over the complaint, you're referring to the video right now, not necessarily the testimony that's in the deposition testimony? I'm referring to both to the extent that the testimony gives us an idea of what the arguable probable cause was. To the extent that plaintiff talks about that on the face of the complaint, that is merely speculation because the testimony of the officers explains what the officers themselves knew at that time. Second of all, the subordinate officers reasonably followed orders from superior officers to enact the mass arrest that included plaintiff. Case law supports the idea- I have a question on that. I think that's an important point here. The case law is pretty clear that, for example, a late arriving officer can reasonably rely on a probable cause determination made by a superior. But here, the complaint alleges that the subordinate officers were present to observe whether the persons being arrested were acting as a unit, for example. So how would that apply here? Right. It applies in that, for example, in Garcia V. Doe, the court in the Second Circuit found that the officers on the scene knew that it was a violation of a mass arrest of people to block vehicular traffic, that they heard dispersal orders or warnings to the crowd that they should not be doing that, and that the protesters remained. In that case, the court found that the subordinate officers were allowed qualified immunity because they had seen that the protesters were violating the vehicular interference statute, they heard the dispersal orders or the request to leave, and that the protesters remained there. And under very similar facts here, we have that as well. Subordinate officers are seeing protesters in the street, defy orders to disperse, and still remain in the intersection. And therefore, it is reasonable. The question is whether it was reasonable for these subordinate officers to follow their superior officers, and in this case, it was. And finally, as to plaintiff's excessive force claims, defendants are entitled to qualified immunity on them. There's been no specific allegation against any named defendant that they personally had any involvement with the claims of excessive force. And also, plaintiffs allege that any named defendant, they do not allege that any named defendant was put on notice that the zip tying of plaintiff or his pepper spray would in any way be excessive. And on that, we'd ask that the district court's order be reversed, and I reserve the rest of my time for rebuttal. Thank you. Thank you. Mr. Cazaley. Thank you, Your Honor. May it please the court. I think we need to talk a little bit about the timeline of this case. This case was filed in September of 2018, and a second amended complaint was filed in February of 2019. The defendants of this case filed their motion to dismiss in February of 2019, and in September of 2019, two years ago, their motion to dismiss was denied. One year after the defendants in this case had filed a motion to dismiss, they filed this motion for judgment on the pleadings, which is virtually identical to the motion to dismiss that they filed one year earlier, and that was denied. Then, once that motion for judgment on the pleadings was dismissed, they filed this appeal. This has been a long process where the defendants have been using these tactics to delay discovery in this case. This case also has 13 parallel cases and a putative class action. What we're seeing, and I think the court absolutely saw this, was that a motion for judgment on the pleadings, the facts as alleged in the complaint must be looked at in the light most and that is exactly what the district court did. Most of the things that Ms. Duncan was just talking about were factual complaints. The exhibits that the city is talking about, they cherry picked. The transcript from the Ahmaud hearing had testimony from police officers. There also was significant testimony from people who were there who contradicted what the police officer says. Judge Perry, in the Ahmaud case, held a three-day hearing where she heard testimony from multiple different people and she reviewed the video. After reviewing the video, she found that the testimony of the officers was contradicted. We're not asking the court to adopt exactly what Judge Perry said. What we're telling you is that Judge Perry's action shows that there was a controversy of facts. Counselor, I'd like to stick to the case at hand rather than the parallel case. Let me ask you about the supervisory officers and their section 1983 liability. Can you tell me what facts were pled in the second amended complaint that would show that these supervisory officers showed deliberate indifference to the use of excessive force? Specifically as to pepper spray, if you could address that. Yes, Your Honor. The major difference in what has been pled in this case, and it's the major difference between this case and Bell, is that these officers were on the scene. These were not supervisory officers from a different location being told information that they had to rely on. We allege that they are on the scene because they are on the scene. They can observe the facts as we allege that nobody was breaking the law, that people were even once they were peddled, they immediately put up their hands like our plaintiff did, and they obeyed all orders. And the officers saw that. So taking that as true, counsel, which we do, is there anything pled in the complaint to show that the supervisory officers were deliberately indifferent to the use of pepper spray, for example, that they could have somehow intervened? I'm not sure I'm seeing that in the complaint. Um, we do allege that the use of excessive force wasn't instantaneous and happened once. This use of excessive force against our plaintiff and all of the other people there took several minutes. The video actually shows that, that it continues to go on. And in fact, the person who uses the excessive force the first time is Sergeant Karnowski, who is one of the supervisors on the scene. So once, as we allege that this incident took several minutes, that was more than enough time for the supervisor officers to intervene. On top of that, we've also seen, as we've alleged, that nobody's been disappointed or there's been no investigation regarding this, which goes back to the deliberate indifference. So are you asking us to look at reasonable inferences or are there actually facts pled that they had sufficient time to intervene and didn't do so or things like that? I believe that the facts pled have taken in totality. And for that, I also believe that the attached exhibit shows that, especially the video. And I believe that when looking at all of this in a light most favorable to the plaintiff, then we get to the answer that, yes, they were deliberately indifferent. To go to the argument that the city makes about arguable probable cause, they're making a, they're talking out of both sides of their mouth here. They're saying that the supervisors had arguable probable cause because they're relying on the people on the ground. Then they're saying the people on the ground have arguable probable cause because they're relying on the supervisors. And what they fail to address is the fact that in Bell, the court is very clear that when there is somebody who is on the scene of a incident, they need to make their own specific individual determinations. And the city is arguing that they don't need to do that. All of the officers here were able to see what was happening. They were able to make their own determination. The video, and as alleged in a light most favorable to the plaintiff, there was no law breaking. Ms. Duncan compared this case to a case out of a separate circuit. And in that case, she says that the people were blocking traffic. In this case, and once again, we're delving into factual determinations, not legal determinations, which are inappropriate at this point. But even if we did the factual determinations, in this case, there was no traffic being hindered because the city had blocked the streets already. They put up barricades. They put walls of police officers. They did not allow cars to go down there. The argument that you can block a street that is closed has no support in the law. I have a question about, you've referenced the video and some of the documents that are attached. I'd like to hear your specific view on how we use these because the defendants are taking particular statements that are made within the deposition because it was attached to the complaint. Both parties seem to be relying heavily on the video without much dispute. So I'm going to ask you the same question. Do we view all of these attached exhibits the same? I don't think that's what I understand your view to be because of the reliance on the video. But what are we to do or what is the district court to do with deposition testimony attached to a complaint when we're at the judgment on the pleadings stage? I think the court makes an excellent point because we're delving into areas that are areas that should be appropriate for motions for summary judgment. But our view is the reason that the complaints were attached was to support the timeline that we alleged in the case. We believe that when there are exhibits, the exhibits must first be reviewed in their totality, not the way that the city is asking you to do. Specifically, this court ruled on a summary judgment case in a case called Burnicle. In Burnicle, at the summary judgment stage, this court ruled, and it was an excessive court to view all the evidence in a light most favorable to the police officers. And at the summary judgment stage, this court said that that was inappropriate. What we think needs to be done here is you should look at all of the evidence in its totality. Do not allow the defendants to cherry pick out the information that is good for them and a claim without any basis that those claims are uncontroverted. They are controverted facts as the judge in this case determined. And when you look at them in their totality, using the standard that is the standard for a motion for judgment of the pleadings, you need to look at all of those in a light most favorable to the plaintiffs. What you can't do is pull out certain things and then look at it in the light most favorable to the defendants. And also, as this court, the first question for Ms. Duncan was absolutely correct. At this point, though, we're getting into factual arguments. This is about whether this was an incorrect decision on the law. I hope that answered your question as it pertains to that. To quickly talk about the unnamed officers or that there are other officers there, actually this court, about this court earlier this month, not this month, in June, in a case called Burbridge, that's 20-1029, this court affirmed a summary judgment denial in a related case and specifically talked about what happens when there are people that you have not specifically alleged. And this court allowed the case to go forward. And that was at the summary judgment stage, way earlier in the case. I wanted to quickly talk about the city's argument about de minimis injury. They've made a, in my mind, unsupported argument that to show that my client was injured, we would have to show that he was pepper sprayed directly in his face, when specifically he alleges that he was pepper sprayed in the back of his head and the side of his face, and that's not enough. First, it's clear with Eighth Circuit law that even de minimis injuries can rise to the level. But to argue that somebody pepper sprayed in the back of their head and on the side of their face is de minimis is not supported by any law whatsoever. I have a question about the zip ties, the handcuffing. Does the analysis of whether that's excessive force, does that change depending upon whether it's a mass arrest or just an individual arrest of the plaintiff here? In other words, would there be justification to use handcuffing under a Bernini kind of situation, but that analysis might be different if it's the plaintiff alone on the street that night and being placed under arrest? I don't think the equation changes. I do think that the arguments of whether they should use handcuffs versus zip ties can be influenced by whether it's a mass arrest. But our allegations here are about the way that the zip ties were applied, how they were done in a manner that was to cause injury, the extended amount of time that the zip ties were on. Now, zip ties cut off circulation to hands. We've alleged that these have been on for hours at a time that they were used to lift the person. And the injuries caused by that, especially the pain to his shoulders, I think are very specific factual determinations in this case. And there has been case law where- Would you agree, though, that if there is probable cause for an arrest, that it's not clearly established that the use of zip ties would  I would disagree with that, Your Honor. We believe that- We understand that the Supreme Court has said that we have to have analogous cases to inform officers. There are analogous cases where the use of handcuffs that have caused injury have been held to cause an injury that is an excessive force violation. We do not believe that the Supreme Court requires specificity all the way down to the level of a zip tie is different than a handcuff. They're used exactly the same way. We believe that there will be testimony from officers that will say that they use them exactly the same way with the same standard supply. And because there's case law that shows that injury caused by a handcuff when used in an excessive, punitive way violates the Constitution, we think that they were properly informed. But back to the de minimis injury, I would just point you to Penny Cook that says even a de minimis injury would allow for this to happen. The last thing in my last minute that the city has asked this court to do is they've asked for a circuit judge's decision in the Burbridge case that was under a different- It was more of the same incident, but we litigated this case very differently, that a circuit judge's decision in a parallel case with a different factual record should rule at the There are three things that the city has said are uncontroverted, but the main one that they keep bringing up is this thing about the dispersal orders. And as we allege, we allege that the dispersal orders told everybody to go to Washington and Tucker. They complied with the dispersal order. They got to Washington and Tucker, and that's when the illegal act happened. There was no noncompliance with the dispersal order. My time is done, and I appreciate it. Thank you. Ms. Duncan, I believe you have a few minutes for rebuttal. Thank you. Just very briefly, as a matter of correction, the motion to dismiss filed initially by the city and its defendants did not include any arguments about qualified immunity. Second of all, I wanted to hit on the Burbridge opinion that he was referencing an Eighth the same facts that are at issue here in the pleadings found that the crowd was acting as a unit in that matter, and that just goes to this area of this call of the mass arrest being a gray area and not a brightly transgressed line for which only that is denied qualified immunity to the officers. It was upon the same- Ms. Duncan, in that other case, was it the same? Are there multiple videos going around in this? I guess that's my question, or are all of these cases relying on the same one? They're essentially relying on the same ones. There's multiples, but they are essentially relying on the same ones. Again, based upon the same facts that were available to Clark on the same weekend, the crowd was acting as a unit. Again, that goes to the gray area for which officers are afforded qualified immunity. Also, when talking about de minimis injury, we're not saying that the injury is dispositive of the force used, but we are saying that it is informative. Here, there's been no allegation of injury either for the zip ties or for the pepper spraying. Again, as the court alluded to, multiple case law in the Eighth Circuit has held that the simple act of zip tying or handcuffing does not rise to excessive force, both in Robertson, Stefnes, and in Blazdek. Finally, again, there's no allegations that any of these defendants perpetrated any kind of pepper spray on the plaintiff, or that they would have had any indication of the And it's for all these reasons, we ask that the district court order be reversed. Thank you. Thank you to both counsel for your argument here today and for your briefing. We will take the matter under advisement. Thank you. Madam Clerk, is that our one and only case for the day? Thank you, and court will be in recess until further order.